# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**KYLE MAZZA,**

        **Plaintiff,**

        **v.**                         **Case No. 19-CV-1724**

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

        **Defendant.**

---

## DECISION AND ORDER

---

### 1. Introduction

Plaintiff Kyle[1] Mazza alleges that she has been disabled since March 15, 2013. (Tr. 13, 33-34.) Therefore, on May 15, 2017, she filed an application seeking child insurance benefits and supplemental security income. After her application was denied initially (Tr. 81-110; 144-58) and upon reconsideration (Tr. 111-40; 159-68), a hearing was held before an administrative law judge (ALJ) on February 7, 2019 (Tr. 30-64). On April 4, 2019, the ALJ issued a written decision concluding that Mazza was not disabled. (Tr. 10-23.) After the Appeals Council denied Mazza's request for review on September 23, 2019 (Tr. 1-4),

---

[1] The plaintiff identifies as female. Therefore, the court will use female pronouns throughout this decision.

she filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 6), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Mazza's work since the alleged onset date did not rise to the level of substantial gainful activity. (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Mazza has the following severe impairments: "Asperger's disorder, mood disorder, anxiety disorder, and obsessive compulsive disorder (OCD)." (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

2

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20

C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a

severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds

to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "[t]he claimant

does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1." (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual

functional capacity (RFC), which is the most the claimant can do despite her impairments.

20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider

all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§

404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-

function assessment based upon all of the relevant evidence of an individual's ability to

do work-related activities." SSR 96-8p. The ALJ concluded that Mazza has the RFC

> to perform a full range of work at all exertional levels but with the following
> non-exertional limitations: the claimant is able to understand, remember,
> and carry out simple instructions that carry a reasoning development level
> no greater than 03; the claimant can work in a low stress job, defined as one
> that requires only occasional work-related decisions and involves only
> occasional changes in the work setting; the claimant can perform work that
> does not impose fast-paced production quotas; and the claimant is
> occasionally able to interact with supervisors, coworkers and the general
> public.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Mazza had no past relevant work.

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 22.) "The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a housekeeping cleaner (DOT 323.687-014) with 444,000 jobs in the national economy, dishwasher (DOT 318.687-010) with 405,000 jobs nationally, and inspector (DOT 559.687-074) with 89,100 jobs in the national economy." (Tr. 22.)

## 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1. Symptom Severity

Mazza argues that "[t]he ALJ erred in relying on Ms. Mazza's activities of daily living in finding that Ms. Mazza's subjective allegations were not entirely consistent with evidence." (ECF No. 11 at 20.) Mazza alleges two specific errors. "First, the ALJ erred in failing to consider that Ms. Mazza could perform activities of daily living on her own schedule, could take as much time as she needed to complete activities of daily living, and could rely on others for assistance when she performed activities of daily living." (ECF No. 11 at 20.) "Second, the ALJ's characterization of Ms. Mazza's ability to attend school without difficulty does not accurately reflect the record." (ECF No. 11 at 21.)

The ALJ did not impermissibly equate Mazza's activities of daily living with an ability to engage in sustained fulltime employment. Rather, the ALJ merely noted that these activities appeared inconsistent with Mazza's alleged limitations. This sort of consideration of her daily activities was not only appropriate, *see Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), but required, *see* SSR 16-3p at sec. 2. d.

However, the ALJ's assessment of Mazza's daily activities, and specifically her attendance at college and her public performance of music, rested on an impermissibly narrow reading, if not a misrepresentation or misunderstanding, of the record. For example, the ALJ noted that "[Mazza] indicated that she stopped attending [college] due to the lack of gas money, but did not have difficulty attending in a face-to-face education environment (Testimony; 12F)." (Tr. 20.) Mazza testified that her lack of money for gas was "another reason" why she stopped attending school. (Tr. 43.) Her primary reason was, "The anxiety got bad again." (Tr. 42.) The ALJ failed to discuss that crucial fact. Mazza's ability to attend school for any period is relevant, especially with regard to her RFC during the period she was in school. But in relying on Mazza's college attendance as a reason for discounting the severity of her reported symptoms and the persuasiveness of other medical opinions, the ALJ erred by ignoring that Mazza's anxiety precluded her from continuing with her schooling.

Similarly, the ALJ stated that "the claimant testified that she performs music in public[.]" (Tr. 21.) She then relied on this fact to discount certain medical opinions and

6

evidence that Mazza was as limited as she alleged. However, the use of the present tense regarding Mazza's performances is inconsistent with the record. Mazza testified that she previously performed music publicly but, by the time of the hearing, had not done so in "years." (Tr. 46.) Again, there is evidence that her withdrawal from public performance was due to her impairments. The fact that Mazza publicly performed music in the past is relevant, but most so with respect to her functional capacity during the period she was performing.

Overall, the ALJ's analysis tends to suggest that Mazza's condition was static over the years. However, the evidence suggests that Mazza's condition was variable and perhaps had deteriorated over time. Her ability to attend college for a brief period appears to have been a passing phase in an overall downward trend. Her withdrawal from both college and music performing could be seen as a harbinger for further deterioration in her symptoms.

Even the evidence that the ALJ relied on to suggest that Mazza's symptoms were "pretty stable"—that there were "only a few modifications in the claimant's treatment regimen, including prescription medication doses" (Tr. 21)—is not consistent with the evidence. Rather, when there were changes in treatment, the trend was generally toward increased doses and more powerful medications, suggesting an overall increase in symptom severity. For example, she progressed from Lexapro and Paxil to Clonazepam, Trazodone, and Seroquel, among many others. (ECF No. 11 at 3-4, 21.)

7

Saying that stable medications suggests stable symptoms was not impermissible "playing doctor," as Mazza argues. The ALJ's error was in mischaracterizing Mazza's overall course of treatment as stable. The progression in treatment and the use of significant psychopharmaceuticals are relevant in assessing Mazza's assertions regarding the severity of her symptoms. *See* SSR 16-3p at 2. d.

Mazza also argues that the ALJ failed to consider the side effects of the medications she was prescribed. (ECF No. 11 at 21-23.) The only evidence that Mazza points to in support of her assertion that she suffered side effects from her medication is an Adult Function Report where she was asked to list all the medications she took. (ECF No. 11 at 21.) She listed five medications. (Tr. 275.) Regarding side effects she wrote "drowsiness, tiredness" next to the first medication and drew a vertical line below it, which the court understands to mean that drowsiness is a side effect of all of her medications. (Tr. 275.) Aside from this statement, Mazza has not pointed to any evidence—such as medical reports, functional capacity assessments, or similar evidence—that side effects from her medication affected her  RFC.

In the absence of any further evidence that these alleged side effects impacted her functional capacity, the court cannot say it was error for the ALJ to not explicitly address this isolated assertion. It is the plaintiff's burden to prove she is disabled and that the ALJ committed a prejudicial error. *Kirby v. Colvin*, No. 2:14-cv-00252-WTL-MJD, 2015 U.S. Dist. LEXIS 80517, at *14 (S.D. Ind. May 28, 2015) (citing *Shinseki v. Sanders*, 556 U.S. 396,

409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009); *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984)).

Remand is required for reassessment of Mazza's symptoms under SSR 16-3p. The significant reasons the ALJ gave for discounting the severity of Mazza's symptoms appear to have been based on misunderstandings or misrepresentations of the record.

### 4.2. Medical Opinion Evidence

Mazza also argues that the ALJ "erred in weighing" Mark Pease's[2] opinion. (ECF No. 11 at 10.) The ALJ found Pease's opinion only "slightly persuasive." (Tr. 21.) She noted "inconsistencies between his own session notes and the claimant's activities":

> For example, Mr. Pease notes in the questionnaire that the claimant has extreme limitations in social interactions (ability to interact with the public in an appropriate manner and not exhibiting behavioral extremes and ability to get along with co-workers and peers without distraction) (22F/3). However, the claimant testified that she performs music in public, had no issues with face to face contact when attending classes, and she had no real issues with co-workers, customers, or supervisors with her previous employer (Hearing Record). Also, Mr. Pease notes an extreme limitation in the claimant's ability to adapt to the demands and pressure of a simple, routine work setting, but the claimant was able to attend classes at MATC for two semesters and performed quite well (12F/3,4,5, Hearing Record). Further, the treatment notes indicate only a few modifications in the claimant's treatment regimen, including prescription medication doses, suggesting pretty stable symptoms (12F/l,3,4,7, 16F/3, 20F/4,10).

(Tr. 21.)

---

[2] Mazza refers to Pease as "Dr. Pease." Pease is not a physician but a nurse practitioner who indicates that he has received a Ph.D. (Tr. 799.)

Because Mazza filed her claim after March 27, 2017, the Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, *revised* 82 Fed. Reg. 15132; *see also* 81 Fed. Reg. 62,560 (discussing proposed changes), apply to her claim. Although Mazza phrases her arguments in terms of the "weight" the ALJ gave to Pease's opinions, the Social Security Administration has abandoned this framework. The new regulations state, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also* 81 Fed. Reg. 62,560, 62,574 (discussing the proposed rule changes) ("In addition to proposing to use the term 'persuasive' instead of 'weight' for medical opinions in 20 CFR 404.1520c and 416.920c, we also propose to use the term 'consider' instead of 'weigh' in 20 CFR 404.1520b and 416.920b."). Rather, the Administration

> will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:
>
> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

10

(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

(4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although the ALJ must consider all of these factors, she need only explain how she considered supportability and consistency. 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2).

Mazza criticizes the ALJ because she "did not identify specific treatment notes and only generally referred to Dr. Pease's records." (ECF No. 11 at 11.) Mazza argues that the ALJ was required to identify the specific treatment notes that she found to be inconsistent with Pease's opinion. (Tr. 11 at 11 (citing *Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir. 2015).) However, the court in *Czarnecki* did not say that an ALJ must always identify the specific treatment notes that are inconsistent with the treating source's opinion. Rather, the court noted that the ALJ "did not identify specific treatment notes contradicting [the physician's] assessment *or provide any other sound explanation for rejecting it*." *Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir. 2015) (emphasis added).

Although the ALJ did not identify which of Pease's treatment notes were inconsistent with Pease's opinion, she gave other reasons for concluding that Pease's opinion was only "slightly persuasive." The problem is that the most significant of these reasons—Mazza's ability to attend college and publicly perform music—were not necessarily "sound." Consequently, reassessment of Mazza's history of college attendance and music performance will, in turn, require a reassessment of Pease's opinion, which was discounted based on those activities.

That is not to say that these activities are not relevant to an assessment of Pease's

opinion. It is undisputed that Mazza did successfully attend college and publicly perform

music during a portion of the period reflected in Pease's opinion. These activities could

be seen as inconsistent with the extreme limitation in social interaction that Pease stated

Mazza suffered from at least March 11, 2015, to November 14, 2018. The question is

whether these activities support discounting the whole of Pease's opinion. It may be

appropriate to find only "slightly persuasive" Pease's opinion that Mazza had an

"extreme limitation" in social interaction during the period that Mazza was successfully

attending college, but find Pease's opinion more persuasive as to Mazza's condition after

she was forced to withdraw from college due to increased anxiety. In this regard, Pease,

like the ALJ, may have inappropriately suggested that Mazza's condition was static.

While the ALJ may have inappropriately relied on Mazza's abilities early in the

alleged period of disability as reflective of her abilities throughout, Pease may have done

the inverse—concluding that the severe impairments he identified at the time of his

assessment were the same years earlier. Sorting through and reassessing this evidence

will be a task for remand.

### 4.3. Evidence

Mazza also argues that the ALJ "erred in failing to predicate her decision on all

relevant evidence." (ECF No. 11 at 17.) Specifically, she argues that the ALJ erred by

failing to discuss an evaluation by Wisconsin's Division of Vocational Rehabilitation

(DVR) (ECF No. 11 at 17-18) and an evaluation by a state agency psychological consultant, Michael Cremerius (ECF No. 11 at 19-20).

The DVR found that Mazza suffered a "serious limitation" in "self-care," "self-direction," "interpersonal skills / acceptance," "work tolerance," and "work skills." (Tr. 830-31.) Or, stated another way, she had a "serious limitation" in every domain it assessed except "mobility" and "communication." (Tr. 830-31.)

The Commissioner argues that it was unnecessary for the ALJ to refer to the DVR's assessment because it was merely cumulative to other evidence in the record. (ECF No. 16 at 18.) The Commissioner also cites 20 C.F.R. § 416.904, which states that decisions of other agencies as to disability or impairment do not dictate the decision of the Commissioner.

The fact that the DVR's assessment reflects its standards rather than those of the SSA would have been a valid basis for discounting the DVR's opinion. *See Hermes v. Berryhill*, No. 16-C-1281, 2017 U.S. Dist. LEXIS 213551, at *17 (E.D. Wis. Dec. 29, 2017). As Judge Griesbach has noted, the DVR uses a binary "serious" or "not serious" assessment of impairments, which is very different from "the more subtle five-point scale of none, mild, moderate, marked, or extreme that the SSA uses to evaluate impairment severity." *Hermes v. Berryhill*, No. 16-C-1281, 2017 U.S. Dist. LEXIS 213551, at *18 (E.D. Wis. Dec. 29, 2017). However, the ALJ did not state that she was discounting the DVR's assessment on

this basis. Thus, the Commissioner's contention amounts to an improper post hoc argument.

But the Commissioner is correct that the DVR's assessment was merely cumulative to evidence that the ALJ discussed. By failing to mention this specific evidence, the ALJ was not "cherry-picking" evidence supportive of her ultimate conclusion or ignoring an entire line of evidence contrary to her conclusion. *See Johnson v. Berryhill*, 758 F. App'x 543, 545 (7th Cir. 2019) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see also*, *Bradley v. Colvin*, No. 15-3150, 2016 U.S. Dist. LEXIS 73610, at *32 (C.D. Ill. June 6, 2016). The limitations identified by the DVR were not outliers but rather were within the spectrum of the opinions reflected in other medical opinions discussed by the ALJ. The ALJ adequately explained the basis for her consideration of that evidence, and there is no reason to suspect that a discussion of the DVR assessment would have been material. Consequently, the ALJ did not err in failing to discuss the DVR assessment.

As to Cremerius, Mazza states that he "opined that, while Ms. Mazza could tolerate occasional contact with coworkers and supervisors, she could tolerate only occasional interaction with the public. (AR 77.)" (ECF No. 11 at 19.) If that was what Cremerius had said, there would be no error because the limitations are consistent with the ALJ's RFC finding that Mazza could have occasional contact with the general public. (Tr. 18.) But what Cremerius actually said was, "The claimant would be limited to

occasional contact with co-workers and supervisors, and only *incidental* contact with the public." (Tr. 77 (emphasis added).)

The Commissioner argues that there was no error because Cremerius's opinion was related to Mazza's prior application for benefits and it was sufficient that the ALJ discussed the two psychological consultants who offered opinions relevant to Mazza's present application. (ECF No. 16 at 19.)

The status of this prior application is not explained by the parties, but the Commissioner does not argue that res judicata bars any part of Mazza's claim. Cremerius's opinion is dated March 25, 2016, and thus arose after Mazza's alleged onset date. For this reason, it appears relevant to Mazza's claim. The Commissioner offers no authority for the suggestion that the ALJ could ignore a medical expert's opinion simply because it was prepared with respect to a prior application, especially when it is part of the record and covered the period relevant to the present claim. In the absence of any authority supporting this proposition or any other argument as to why it was not error for the ALJ to fail to discuss Cremerius's opinion, the court must conclude that the ALJ erred and remand is required.

## 5. Conclusion

Central to the ALJ's conclusion that Mazza was not disabled was evidence that she attended college and publicly performed music. While such evidence is relevant, the ALJ seemed to overlook that Mazza was forced to withdraw from college because of increased

symptoms and had not performed music publicly in years. Remand is necessary so that the ALJ can reassess the severity of Mazza's symptoms consistent with SSR 16-3p and the persuasiveness of Pease's opinion. The ALJ will also need to assess Cremerius's opinion on remand.

A direct award of benefits, however, is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of November, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge